UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA
            Plaintiff,

            v.                                          C.A. No. 09-607-ML

MICHAEL BRIER, JEFFREY SROUFE,
ESTHER SANTIAGO, CARMEN MIRANDA,
MARIA CAROLINE HALOG, CRISELYN RIVERA,
NINTZA BENITEZ, REFUNDS NOW, INC., RNTS, INC. (a/k/a
REFUNDS NOW TAX SERVICE, INC.),
FTIRS, INC., POTIRS, INC., IHIRS, INC.,
            Defendants.


DECISION AND ORDER

In this action, the Government seeks to enjoin Defendants[1] from, inter alia, engaging in

conduct subject to penalty under the Internal Revenue Code, preparing federal income tax

returns, and providing tax related advice and/or services. The Government also requests that the

Court order Defendants to give the Government a list of clients for whom they have prepared

federal income tax returns since January 1, 2004. The Government moves for injunctive relief

pursuant to 26 U.S.C. §§ 7407, 7408 and 7402(a).

This Court conducted a preliminary injunction hearing over a four-day period.[2] At the

end of the hearing, defense counsel somewhat reluctantly agreed to consolidate the preliminary

---

[1]The Government voluntary dismissed Defendants Maria Caroline Halog, Criselyn Rivera, and Nintza
Benitez from this action without prejudice pursuant to Fed. R. Civ. P. 41.

[2]The hearing dates were May 12, 2010, ("Transcript I"); June 14, 2010, ("Transcript II"); June 15, 2010,
("Transcript III"); and June 21, 2010, ("Transcript IV").

1

injunction hearing with the trial on the merits. Defense counsel expressed his concerns about certain hearsay evidence that had been presented during the hearing. While "[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character of the injunctive proceeding." Asseo v. Pan American Grain Co. Inc., 805 F.2d 23, 26 (1st Cir. 1986). Having now had an opportunity to review the transcripts of the hearing and the affidavits presented by the Government, the Court determines only the issue of preliminary relief at this time.

## I. The Tax Return Preparation Business

In 2001, Defendant Michael Brier (Brier) formed a tax preparation service business called Refunds Now, Inc. ("Refunds Now"). Refunds Now operates eight offices located in Rhode Island and southeastern Massachusetts. In 2001, Refunds Now prepared approximately 250 tax returns; in 2009 Refunds Now prepared approximately 8,000 returns.

Employees who work for Refunds Now are not required to have a high school diploma, a GED, or any prior experience in preparing federal income tax returns. Prior to being hired, however, prospective employees undergo 18 hours of classroom training and testing. They are interviewed by Refunds Now management to ensure that the prospective employee can prepare a tax return and can relate well to customers. Once an individual becomes an employee of Refunds Now, he or she undergoes two weeks of additional training.

Refunds Now employees are compensated based on an hourly rate and a bonus computed at the end of the tax filing season. An employee's bonus is usually between 3-7 percent of the

amount of tax preparation fees that Refunds Now collects for the returns that the employee

prepares. The fee Refunds Now charges a client to prepare a tax return is based on the number of

schedules prepared in the return, and, in some circumstances, the time involved in preparing the

return.

In order to receive their fees more quickly, and to attract more customers, Refunds Now

utilizes certain "bank products." These bank products, generally referred to as rapid refunds,

refund anticipation loans, or refund transfer loans, enable a client to receive his or her refund

more quickly than "paper filing," and allow the tax preparation fee to be automatically deducted

from the refund amounts and be remitted directly by the bank to Refunds Now. These bank

products, however, can only be utilized by individuals who electronically file tax returns. By

electronically filing a return and requesting a rapid refund, in certain circumstances, an individual

can receive an anticipated refund within 48 hours of the return being electronically filed with the

Internal Revenue Service ("IRS").

## II. Defendants

Michael Brier ("Brier") is the owner of Defendants Refunds Now, RNTS, Inc., IHIRS,

Inc., POTIRS, Inc., and FTIRS, Inc. Brier testified that these corporations operate "all under one

big umbrella." and "are, for all intents and purposes, one in the same." Transcript IV at 27;

Transcript II at 79. Brier has been the director of marketing for Refunds Now since in or about

2006. Brier decided to "divest" himself of the "day-to-day operations" of the tax return

preparation business and focus on marketing because of "court issues."[3] Transcript IV at 70. At

---

[3]The "court issues" to which Brier referred to was his conviction in Rhode Island state court in 2005. Brier pled guilty to two counts of embezzlement and was sentenced to eight years in prison, with six years suspended and two years of home confinement. He was also ordered to pay restitution of $156,494.

one time Brier trained Refund Now employees but he is no longer involved in that aspect of the business.

Brier received his undergraduate degree from the University of Rochester and a master's degree in business administration from the University of Rhode Island. Brier began practicing as an accountant in 1987. Brier received his certification as a certified public accountant ("C.P.A.") in 1991. That certification, however, was suspended in 1999, after Brier entered into a consent order with the State of Rhode Island Board of Accountancy ("Board"). In that consent order, Brier accepted the Board's findings of "unlawful practice of accounting, unlawful use and disclosure of confidential information, and dishonesty, fraud or negligence in the practice of accounting." Plaintiff's Exhibit 16 at 7. His certification has not been reinstated. Brier has also held the designation as a certified financial planner, however that credential was revoked. In June 2003, the IRS notified Brier that he was no longer eligible to practice before the IRS. In 2005, the Rhode Island Department of Business Regulation issued an order barring Brier from associating with a licensed broker/dealer or an investment advisor in the state of Rhode Island. That order was based on Brier's falsification of his application to apply for a license as a broker/dealer. In his application, Brier failed to disclose that his C.P.A. license had been suspended.

Jeffrey Sroufe ("Sroufe") received his undergraduate degree and a master's degree in business administration from Johnson and Wales University. Sroufe began working for Refunds Now as a seasonal employee in 2004, and became a full-time employee in January 2005. Sroufe is currently the Director of Operations for Refunds Now and is responsible for the operation of the computer network. Sroufe also prepared tax returns and assists in employee training and

customer service.

Esther Santiago ("Santiago") is the president of RNTS, Inc., the company which purportedly "owns" Refunds Now. Santiago is responsible for preparing tax returns, managing employees, payroll preparation for clients, and customer service issues. Carmen Miranda ("Miranda") is a long-term employee of Refunds Now. Miranda prepared tax returns and managed one of Refunds Now offices. Miranda is the "responsible official"[4] for IHIRS, Inc.

### III. The IRS Investigation

### A. General Overview

In July 2007, the IRS assigned Agent Christine Stone ("Stone") to conduct an investigation of Defendants. Her investigation revealed that Defendants prepared approximately 24,000 individual federal income tax returns from 2003 through 2007. As of May 10, 2010, the IRS has examined 350 income tax returns prepared by Refunds Now. Stone testified that of the 350 returns that were examined, approximately 92% required some form of adjustment. Stone explained that the examination of approximately 309 returns resulted in increased tax liabilities. Of these 309 returns, the average additional tax due was approximately $3,800. The examination of two returns resulted in decreased tax liabilities. The examination of 22 returns resulted in required adjustments but these adjustments had no impact on tax liability. The percentage of tax returns with deficiencies, i.e., where an additional tax liability was determined to be owed after examination, was approximately 90%.

Stone did not select which returns would be examined. The returns were selected by the

---

[4]A "responsible official" is an individual with authority over the tax preparer's electronic filing operation at a location. IRS Publication 3112.

5

Planning Special Programs department of the IRS. The first 30 returns selected for examination were selected on a purely random basis. Although Stone stated that she was not "privy" to how the remaining returns were selected, she was "sure" that the IRS would follow "trends of adjustments" that had been indicated on the examined returns. Transcript I at 103. For example, if the examinations of the first thirty returns showed Schedule A issues or earned income credit issues, additional returns selected for examination would concentrate on returns with Schedule As and/or returns with an earned income credit.

Stone testified that the IRS' review of the returns revealed misrepresentations concerning the actual preparer of the return and "abusive items" such as "fabricated income, fabricated deductions, inflated deductions, underreported income and several abuses on credits including the education credits, [and] the earned income tax credits." Transcript I at 51. Specifically, the IRS found: (1) the use of incorrect filing statuses to reduce tax liabilities and maximize the earned income tax credit; (2) the failure to apply the tests to determine whether an individual qualified as a taxpayer's dependent; (3) the fabrication or manipulation of Schedule C[5] gross receipts for the purpose of maximizing the earned income tax credit or minimizing net taxable income subject to self-employment taxes; (4) the fabrication or inflation of various Schedule A[6] deductions, such as charitable contributions and/or employee business expenses; and (5) the fabrication or manipulation of income and expenses on Schedule E.[7] Based on the examined returns, the Government claims that it has suffered a loss of more than $1.1 million of tax

---

[5]Schedule C is used to report profit or loss from a sole proprietorship.

[6]Schedule A is used to itemize various personal expenses that are deductible.

[7]Schedule E is used to report supplemental income and loss including income and loss from rental estate, royalties, partnerships, S corporations, estates, or trusts.

revenue exclusive of interest and/or penalties.

## B. Electronic Filing Identification Number ("EFIN") Investigation

The IRS investigation included a review of Refunds Now EFINs. An EFIN is the number assigned by the IRS to commercial tax return preparers so that they may file tax returns electronically. An EFIN allows the IRS to identify the location from which a return is filed. The IRS requires a tax preparation firm to have a separate EFIN for each of its office locations. All employees at a location are entitled to use the EFIN assigned to that location. The individual responsible for safeguarding the EFIN is called an electronic return originator ("ERO"). Without an EFIN, a commercial preparer may not file returns electronically and may not offer bank products to its clients. As of May 11, 2010, the eight office locations of Refunds Now were associated with an estimated 62 EFINs. Stone testified that "most" of those EFINs have been suspended.

The IRS's investigation determined that, in or about 2002 or 2003, Brier obtained one or two EFINs for Refunds Now. They were later suspended by the IRS. Sroufe then obtained several EFINs for Refunds Now. Those EFINs were suspended for filing returns that were prepared by Brier, a suspended filer. After Sroufe's EFINs were suspended, Santiago obtained several EFINs which were also suspended.[8] Nitza Benitez ("Benitez") then obtained about eight EFINs, one for each Refunds Now location. After the IRS suspended the EFINs Benitez obtained, the IRS identified three new corporations with Refunds Now locations that had long-term Refunds Now employees as the responsible officials: FTIRS, Inc., POTIRS, Inc. and IHIRS,

---

[8]Sroufe testified that at some point he became president of Refunds Now in order to obtain an EFIN for Refunds Now. He testified that he did not know who asked him to become president of Refunds Now. Sroufe also testified that after the EFIN that he obtained was suspended, Santiago became president of Refunds Now so that she could obtain an EFIN.

Inc. Stone testified that her investigation revealed that "in later years" Miranda was identified as the "owner" of IHIRS, Inc. and its ERO. Stone also testified that she reviewed the Rhode Island Secretary of State's corporate database and determined that there were no corporate filings for IHIRS, Inc. or POTIRS, Inc. FTIRS, Inc., POTIRS, Inc., and IHIRS, Inc. obtained EFINs that were subsequently suspended. Stone testified that there were "at least" 8-10 separate individuals associated with Refunds Now who have had their EFINs suspended. Transcript I at 59.

Stone testified that while Brier's initial EFINs were suspended because he did not file his personal tax returns, subsequent EFINs were suspended because individuals were filing returns that were identified as prepared by a suspended electronic filer, or because Refunds Now did not file a corporate tax return, or because the IRS identified misrepresentations about the individual preparer of returns. Stone explained that once an individual's EFIN is suspended the individual may no longer file returns electronically and another individual may not electronically file a return for the suspended filer. Stone testified to a pattern of conduct: once the IRS suspended an EFIN associated with Refunds Now, Refunds Now would apply for a new EFIN.

In January 2009, IRS Agent Carol Chandler ("Chandler") visited the Broad Street office of Refunds Now. Chandler went to the Broad Street office to meet with Maria Halog ("Halog") because tax returns were prepared from that office in 2008 under an EFIN assigned to Halog. When Chandler met with Halog, Halog was unable to produce any documentation that showed her EFIN. Halog informed Chandler that she had prepared tax returns for Refunds Now for six years and was currently leasing the Broad Street, Wickenden Street, and Westminster Street offices from Refunds Now. Chandler testified that Halog told her that she "knew nothing . . . about the leases, [and] had no idea what she was paying for the leases. . . ." Transcript I at 137.

Chandler also visited the Wickenden Street Refunds Now office to perform a "site check" of returns prepared by Santiago. Transcript II at 7. Before Chandler's interview with Santiago commenced, however, Brier entered the office and answered the questions that Chandler posed to Santiago concerning her EFIN.

In the same month, Chandler visited the Refunds Now office in Fall River, Massachusetts. Chandler went to the Fall River office to interview Benitez because Benitez's EFIN was being used to electronically file returns from the Fall River office. Chandler spoke to an individual at the Fall River office who informed her that there was nobody at the Fall River or Wickenden Street, Providence office with the name Nitza Benitez.

During the 2010 tax filing season, the IRS identified an entity named Best Taxes of Rhode Island, Inc. ("Best Taxes"). Best Taxes was incorporated in or about the fall of 2009 with the responsible official listed as Carmen Morales, a tax return preparer for Refunds Now. Best Tax obtained EFINs, however, those EFINs were suspended by the IRS in 2010.

During the 2010 tax filing season, the IRS also identified tax returns that were prepared by Refunds Now but were electronically filed by Absolute Tax Services in Ruckersville, Virginia. Absolute Tax Services is owned by Dennis Beckendorf ("Beckendorf"), who is married to a business associate of Brier. The IRS has also identified returns that were prepared by Refunds Now that were electronically filed by a business entity in Shreveport, Louisiana. Stone testified that the Rhode Island Division of Taxation contacted her because they had a "large volume" of Rhode Island residents submitting tax returns from Virginia and Louisiana EFINs "which was unusual." Transcript I at 65. The IRS has not been able to identify a "reasonable conclusion" why a large volume of Rhode Island taxpayers would use a Virginia or

Louisiana entity to electronically file their tax returns. Id. The IRS also identified two additional

EFINs, associated with Jedi Consulting, a Tennessee entity, that were used to file Refunds Now

returns. Stone testified that Jedi Consulting was "linked" to Sroufe.[9] Transcript I at 64.

After Best Taxes' EFINs were suspended, Brier used EFINs assigned to Beckendorf to

continue electronically filing tax returns prepared by Refunds Now even though he knew that the

EFINs assigned to his companies had been suspended by the IRS. Brier stated that the reason

that Refunds Now was using EFINs assigned to other individuals was because Refunds Now

EFINs had been suspended. Brier admitted that, as of the first quarter of 2010, all of Refunds

Now EFINs had been suspended, yet Refunds Now continued to electronically file returns using

EFINs not assigned to Refunds Now.

Brier testified that Refunds Now changed EFINs frequently as a "marketing tool" in order

to "throw off the competition." Transcript IV at 18-19. Brier explained that competing tax

preparation firms are able to obtain information identifying the number of electronically filed tax

returns from a Refunds Now office. He explained that these firms use this information to

determine whether a geographic location would be a good place to open a new office. Brier

explained that by changing EFINs often, Refunds Now only presents one year of history to its

competition and protects its business dominance in a particular geographic location.

After the IRS suspended the EFIN for Best Taxes, Sroufe obtained another EFIN. Sroufe

first testified that he was "not exactly sure" how Refunds Now electronically filed returns for the

2010 tax filing season. Transcript IV at 99. Sroufe admitted however that, as director of

---

[9]Stone did not explain how she determined that Jedi Consulting was linked to Sroufe. Sroufe testified that
he was not familiar with Jedi Consulting but was "not sure" if he was affiliated with Jedi because he was "not sure" if
Jedi was a "real company." Transcript IV at 97-98.

operations, he set up the Refunds Now computer systems to assist in electronic filing. As part of that process, he testified that he enters an EFIN into a computer software program. Sroufe stated that he obtained an EFIN at some point between January and April 2010. Sroufe testified that he obtained this EFIN from the ERO but he was "not sure who that person was." Transcript IV at 103. He testified that the individual was a "man" because a man's name was on the EFIN letter. Id. at 104. Sroufe testified that his "involvement . . . in arranging for this new EFIN" was that he "just got a copy of the letter, that's all I got . . . ." Id. Sroufe first testified that he was e-mailed the letter but then stated that Refunds Now received the EFIN letter via the facsimile machine and that it was "handed" to him. Id. at 106. Sroufe did not know who sent the letter, was "not sure" when the letter was handed to him, and was "not sure" who handed the letter to him. Id. at 104-105. Sroufe, however, testified that the man who handed him the letter was a Refunds Now employee. Id. at 105.

## C. Misrepresentation of Tax Preparers

Stone testified that a tax return that is electronically filed by a firm will include either the tax preparer's social security number or a preparer tax identification number and an employer identification number. The purpose of these numbers is to enable the IRS to identify the commercial entity and the individual preparer of a tax return. Stone's investigation revealed that the identity of the Refunds Now return preparer was misrepresented on tax returns. Brier informed Stone that he did not prepare federal income tax returns for the years 2004-2006 for Refunds Now. Stone, however, determined that returns were prepared listing Brier's social security number as the paid preparer for a small number of returns in 2003 and 2004, and about 800 returns in 2005. Additionally, Brier prepared returns using various employer identification

11

numbers and social security numbers that "do not belong to him. . . . " Stone Affidavit at ¶ 11.

For example, Brier used his own social security number in tax filing season 2004 and 2005,

Santiago's and Sroufe's social security numbers in tax filing season 2006 and 2007 and

Santiago's and Benitez's social security numbers in tax filing season 2008. Id.

The IRS has not been able to determine exactly how many federal income tax returns the

Defendants and/or individuals or entities under Defendants' direction and control have prepared

because the identifying numbers associated with the different parties change constantly and

rapidly. Stone concluded that the Refunds Now individual who prepared the return is not always

the same person whose name is listed as the preparer on the return. Stone testified that based

upon her review of tax returns and interviews of taxpayers who had their returns prepared by

Refunds Now, Brier was the actual preparer of many returns, even though the name listed on the

return as the paid preparer was not Brier's.

### D. Refunds Now Clients

Stone testified that many of the Refunds Now clients she interviewed indicated that Brier

prepared their return in spite of the fact that the return identified a different preparer. Some of

the taxpayers indicated that they had never met the individual listed on the return as the preparer.

These taxpayers also indicated that their returns showed fabricated Schedule C income,

fabricated or inflated Schedule A deductions, and fabricated education expense credits.

Furthermore, according to her affidavit, Stone stated that Brier and other unidentified employees

of Refunds Now admitted that Refunds Now employees are

> trained and directed to accept information from customers that is clearly
> questionable or false and report it on . . . returns. Employees are instructed that
> [Refunds Now] will lose business if employees turn away customers suspected of
> providing inaccurate information and that they should prepare and file those . . .

returns even if the information contained therein is incorrect.

Stone Affidavit at ¶ 21.

### 1. Margaret Inkum and Osei Owusu

Mary Jo McCarten ("McCarten"), a tax compliance officer for the IRS, testified that she

audited the 2004 and 2005 joint tax returns of Margaret Inkum ("Inkum") and Osei Owusu

("Owusu") and conducted an interview with the taxpayers. Inkum and Owusu's 2004 joint

federal tax return reported a Schedule A charitable contributions deduction of $4,755 and

deductions for employee business expenses. McCarten testified that Inkum and Owusu informed

her that they did not have any support for the charitable contributions or the employee business

expense deductions and that they did not know how the purported deductions came to be reported

on the return. The 2004 and 2005 tax returns also included a $10,000 education expense credit

for Owusu. McCarten testified, however, that Owusu did not attend school and that Owusu did

not provide documentation that showed there "were any sort of education or schooling

expenses." Transcript II at 30. The tax return preparation fee was deducted from the refund

amount for each return.

Inkum and Owusu provided an affidavit to Stone. In that affidavit, Inkum and Owusu

stated that Brier prepared their tax returns and that

> Brier asked if [Owusu] went to school. We responded yes. A $1,000 down
> payment on the New England Tractor Trailer School was made sometime in 2005.
> We told [Brier] we had the receipt at home. We did not inform . . . Brier that we
> spent $10,000 in tax year 2004 and 2005 for education expenses. We did not
> instruct him to claim these amounts on the returns.

Plaintiff's Exhibit 4 at ¶ 16. Stone testified that Inkum and Owusu informed her that they did

not discuss or authorize Brier to take the charitable contributions or the employee business

expense deductions. The affidavit also stated that Sroufe and Santiago were "identified" on page 2 of the 2005 return but to the best of Inkum's and Owusu's knowledge they did not prepare the return. Id. at ¶ 20. Stone testified that the charitable contribution, employee business expense, and education expense amounts were adjusted by the IRS because the amounts were either fabricated or inflated. As a result of the IRS's examination of the returns, additional taxes of $3,920 were assessed for 2004 and $2,392 for 2005.

## 2. Wanda Negron

McCarten also interviewed Wanda Negron ("Negron") and examined her 2005, 2006, and 2007 tax returns. Criselyn Rivera, a Refunds Now employee, prepared her returns. Negron's tax returns reported Schedule C income from a hairdressing business. Negron informed McCarten, however, that she did not have a hairdressing business, could produce no documentation that would support any income, and did not know how the income came to be reported on her tax returns. Brier, however, produced an "income verification engagement letter" for 2006 and 2007, purportedly signed by Negron, which stated that Negron was self-employed and her "job description" was a "hair dresser" and that she earned approximately $4,800 in 2006 and $6,300 in 2007. Defendant's Exhibit K & L. In an affidavit provided to Stone, however, Negron stated that she "did not sign a [Refunds Now] statement as to the accuracy of the Sch[edule] C amounts." Plaintiff's Exhibit 5 at ¶ 12. The tax return preparation fee was deducted from her refund amount.

Negron's 2006 tax return also reported a federal telephone excise tax credit of $1,321. McCarten concluded that Negron was not eligible for the excise tax credit because Negron did not have any documentation to support the credit. Negron informed McCarten that "[s]he did not

know where the amount came from. . . ." Transcript II at 39. As a result of the IRS's examination of Negron's returns, additional taxes of $1,328, $3,340, and $3,167 were assessed for the years 2005, 2006, and 2007, respectively.

### 3. April Smith

McCarten also interviewed April Smith ("Smith") and examined her 2006 tax return. Smith's return reported Schedule C business income of $8,600. Based on information received from Smith, McCarten adjusted Smith's Schedule C income to $6,760. Upon completion of the examination, the IRS determined that Smith was entitled to a refund of $13.

In an affidavit provided to Stone, Smith explained that, in addition to other employment, she worked as a model. After Smith was informed by the IRS that her tax return was being audited, she sought the assistance of Refunds Now. According to the affidavit, when Smith spoke to a representative of Refunds Now, the representative informed Smith that Refunds Now "would help [her] put the paperwork together" and that it was "not . . . a big deal." Plaintiff's Exhibit 7 at ¶ 16. Smith met with "Jeff" and Jeff informed her that she did not have the proper paperwork. Id. at 17. Smith informed Jeff that she did not have any receipts and Jeff informed her that without receipts the auditor would "eat [her] alive." Id. at 20. "Jeff told [her] that the office would help [her] make the fake receipts." Id.

Smith's audit experience is not an isolated incident. Stone's affidavit states that Refunds Now interfered with the IRS' examinations of their customer's tax returns by advising customers not to appear for their return examination appointment and by advising and assisting customers in creating falsified documents to substantiate items reported on their returns.

15

### 4. Diane Fielder

On February, 15, 2010, Diane Fielder ("Fielder") had her 2009 federal income tax return prepared by Refunds Now by a man named Ishmael. Ishmael informed Fielder that she would receive her federal refund in two weeks. When Fielder did not receive her refund in that time span, she contacted Refunds Now and met with Maria Santos ("Santos"). Santos gave Fielder a "document" that listed the refund due Fielder. Transcript I at 40. Fielder noted that the refund amount listed on the document was double the refund amount listed on the copy of her tax return. Santos informed Fielder not to worry and that "we got you a bigger refund." Id. at 41. Santos did not provide Fielder with documentation to support the higher refund amount.

Based upon the tax return prepared by Ishmael, Fielder expected to receive a federal refund of $2,241. Instead, on April 2, 2010, Fielder received a refund check of approximately $4,700. After receiving the refund check, Fielder went to the IRS office in Providence and spoke to an IRS representative. The representative informed her that the copy of the return she had been given by Refunds Now did not agree with the return that had been filed with the IRS. The representative informed her that some of the amounts listed on the return that was filed with the IRS were "incorrect" and that she was not "qualified" for some of the "exemptions" listed on the return. The copy of the return provided to her by Refunds Now listed her total income, from unemployment compensation, at $23,296. The return filed, however, listed $17,600 of unemployment compensation, $5,696 of wages, and an earned income credit. Fielder, understood however, that, because she did not have any income other than unemployment compensation, she was not eligible for the earned income credit. Brier testified that the problem with Fielder's tax return occurred because "somebody changed something, the return had a

computer glitch somehow because the return that was sent was not the correct return that the taxpayer signed off on." Transcript III at 18.

## IV.  Analysis

### A.  26 U.S.C. § 7407

26 U.S.C. § 7407 provides that if the Court finds, inter alia, that a tax return preparer has "engaged in any conduct subject to penalty under [26 U.S.C.] section 6694 or 6695" or has "engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws" and that "injunctive relief is appropriate to prevent the recurrence of such conduct" the Court "may enjoin such person from further engaging in such conduct." 26 U.S.C. § 7407(b)(1)(A); (D); (b)(2).  Further, if the Court finds that a tax return preparer has "continually or repeatedly" engaged in the offensive conduct, and that an injunction prohibiting only proscribed conduct would not be "sufficient to prevent such person's interference with the proper administration [of the Internal Revenue Code,] the court may enjoin such a person from acting as a tax return preparer." Id. at (b)(2).  The Government asks this Court to issue an injunction pursuant to § 7407 enjoining all Defendants from acting as tax return preparers.

The Government argues that where the provisions of a statute, like § 7407, expressly authorize injunctive relief, the traditional four-factor test for injunctive relief need not be met. United States v. Renfrow, 612 F. Supp. 2d 677 (E.D.N.C. 2009) (where injunction is expressly authorized by statute and statutory conditions are satisfied, traditional injunctive relief test need not be met); see also SEC v. Management Dynamics, Inc., 515 F.2d 801 (2d Cir. 1975).  In such instances, courts focus on the statutory conditions for injunctive relief. Management Dynamics,

515 F.2d at 801. Although the First Circuit has not specifically decided the issue of whether the traditional test applies in a case where a statute expressly authorizes injunctive relief, it has observed that "where Congress has specifically authorized injunctive relief . . . it may not be necessary to satisfy the four-factor test." Coxcom, Inc. v. Chaffee, 536 F.3d 101, 112 n.14 (1st Cir. 2008). This Court considers the Government's claim for injunctive relief pursuant to the statutory factors expressly listed in

§ 7407.

To issue an injunction pursuant to § 7407, the Court must find that: (1) the defendant is a tax return preparer; (2) the conduct complained of falls within one of the areas of proscribed conduct; and (3) that an injunction is "appropriate to prevent the recurrence" of the proscribed conduct. United States v. Ernst & Whinney, 735 F.2d 1296, 1303 (11th Cir. 1984). The Government must prove each element by a preponderance of the evidence. United States v. McIntyre, ___ F. Supp. 2d ___, 2010 WL 2103226 (C.D. Cal. 2010).

### 1. Defendants as Tax Preparers

According to the tax code, a "tax return preparer" is "any person who prepares for compensation, or who employs one or more persons to prepare for compensation" a federal tax return. 26 U.S.C. § 7701(a)(36)(A). The term "person" means, inter alia, an individual, company, or corporation. Id. at (a)(1). The Court finds that all of the Defendants are tax return preparers.

### 2. Proscribed Conduct

### a. Fraudulent or deceptive conduct under § 7407(b)(1)(D)

The Government contends that there are several instances of proscribed conduct which

18

support the issuance of an injunction under § 7407. The Government first argues that

Defendants' conduct as it relates to the securing and use of EFINs is "fraudulent or deceptive"

and "substantially interferes with the proper administration of the Internal Revenue laws." 26

U.S.C. § 7407(b)(1)(D).

EFINs are assigned and regulated in accordance with guidelines described in IRS

Revenue Procedure 2007-40. Participants in the IRS electronic filing program must comply with

the provisions of Revenue Procedure 2007-40 and all notices and publications governing IRS

electronic filing, including but not limited to, IRS Publication 1345 ("Handbook for Authorized

IRS e-file Providers of Individual Income Tax Returns") and Publication 3112 ("IRS e-file

Application and Participation"). See IRS Revenue Procedure 2007-40. If an individual assigned

an EFIN has been suspended from the electronic filing program, the individual may not

electronically file tax returns.[10]

Brier and Refunds Now[11] have certainly engaged in fraudulent or deceptive EFIN conduct

which substantially interferes with the proper administration of the Internal Revenue laws.

See generally United States v. Stone, 1:06-CV-157, 2006 WL 2265436 (W.D. Mich. Aug. 7,

2006) (preliminarily enjoining individual taxpayer and *firm*). Brier and Refunds Now obtained

approximately 62 EFINs for eight locations. Brier's testimony that Refunds Now changes EFINs

frequently as a marketing tool to throw off the competition is not in the least bit credible. The

Court finds that Brier and Refunds Now changed EFINs frequently because the IRS repeatedly

suspended the EFINs as a result of Brier's and Refunds Now's noncompliance with EFIN

---

[10]Suspensions are usually for a one or two year period. IRS Publication 3112.

[11]Unless otherwise noted in the analysis, any reference to Refunds Now includes a reference to RNTS, Inc., FTIRS, Inc., POTIRS, Inc., and IHIRS, Inc.

regulations. Brier played EFIN roulette – applying for a new EFIN as soon as an EFIN was suspended. Brier and Refunds Now continued to obtain EFINs, and file returns, after Brier knew that the EFINs Refunds Now obtained had been suspended. Brier and Refunds Now also used EFINs assigned to other individuals and entities to continue to file tax returns when all Refunds Now EFINs had been suspended.

Sroufe has also engaged in proscribed conduct. Sroufe became president of Refunds Now in order to obtain EFINs for Refunds Now.[12] Those EFINs were suspended because the IRS determined that Sroufe was using EFINs to file returns on behalf of Brier, a suspended filer. Once the EFINs were suspended, however, Sroufe admitted that he relinquished the office of president to allow Santiago to become president and obtain new EFINs for Refunds Now. Consequently, Sroufe was aware that Refunds Now continued to obtain EFINs after the EFINs he obtained for Refunds Now had been suspended. Furthermore, Sroufe was also involved in obtaining another EFIN for Refunds Now in early 2010. Sroufe's testimony concerning this matter, as well as most of his testimony on other issues, was purposefully evasive. The Court finds that Sroufe engaged in fraudulent and deceptive EFIN conduct which substantially interfered with the proper administration of the Internal Revenue laws.

The Government also alleges that Santiago and Miranda participated in fraudulent and deceptive EFIN conduct. The Court finds that there was scant evidence presented concerning the securing and use of EFINs as to these two individuals. The Government has not met its burden with respect to Santiago and Miranda.

---

[12]Sroufe testified that he became president of Refunds Now to obtain "an" EFIN. Transcript IV at 96. Stone testified that Sroufe, however, obtained several EFINs. The Court credits Stone's testimony.

### b. Conduct Subject to Penalty Under 26 U.S.C. § 6695(c) – Failing to Furnish Identifying Number

The Government next argues that Defendants engaged in conduct subject to penalty under § 6695(c). 26 U.S.C. § 6695(c) penalizes a tax return preparer who fails to furnish an identifying number on a tax return unless that failure is due to reasonable cause and not due to willful neglect. See 26 U.S.C. §§ 6695(c); 6109(a)(4); United States v. Buddhu, Civil Action No. 3:08-cv-0074(CFD), 2009 WL 1346607 (D. Conn. May 12, 2009). Stone testified that the identify of the Refunds Now preparer was misrepresented on tax returns. Stone identified returns that were prepared by Brier that listed various employer identification numbers or social security numbers that did not belong to Brier. Brier did not list his identifying number on returns that he prepared; rather, he listed the identifying numbers of other Refunds Now employees. Brier's failure to list his own identification number is therefore not due to a reasonable cause. The Court finds that his failure to use his own identification number was intentional and that his purpose was to mislead the IRS as to the preparer of the return.

Additionally, while Brier informed Stone that he did not prepare returns from 2004-2006, Stone identified approximately 800 returns during those years listing Brier's social security number as the preparer number on the returns. Either Brier was untruthful when he spoke to Stone or another unidentified Refunds Now employee or employees listed Brier's social security number on approximately 800 returns that Brier did not prepare. Brier's conduct subjects him and Refunds Now to penalty under 26 U.S.C. § 6695(c).

The Government's evidence of a § 6695(c) violation centered around Brier and Refunds Now. The Government failed to present sufficient specific evidence concerning Sroufe's, Santiago's and Miranda's alleged failure to furnish their identifying numbers. Consequently, the

Government has failed to meet its burden with respect to Sroufe, Santiago, and Miranda on a § 6695(c) violation.

### c. Conduct Subject to Penalty Under 26 U.S.C. § 6694(a)[13]

The Government next argues that Brier engaged in conduct that is subject to penalty under § 6694(a). A tax return preparer is subject to penalty under § 6694(a) where:

> (1) the return contains an understatement of liability; (2) that understatement is due to a position for which there was not a realistic possibility of being sustained on its merits; and (3) the preparer knew or reasonably should have known that the position was either frivolous or was not disclosed pursuant to [26 U.S.C.] § 6662(d)(2)(B)(ii).

United States v. Pugh, ___ F. Supp. 2d ____, 2010 WL 2266069 at *13 (E.D.N.Y. June 1, 2010) (internal quotation marks and citation omitted). The Government argues that Brier violated § 6694(a) because Brier, as the owner of Refunds Now and the other corporate Defendants, (1) prepared, or allowed employees under his direction and control to prepare, income tax returns, (2) that included understatements of tax liabilities which had no realistic possibility of being sustained on the merits and, (3) that he did not disclose and that he knew, or should have known, were frivolous.

It is clear that at least three hundred tax returns prepared by Brier and Refunds Now contained an understatement of tax liabilities. By example, Brier prepared the Inkum/Owusu return which claimed an inflated education expense credit and Schedule A charitable contributions and business expense deductions without proper support. Negron's return, prepared by a Refunds Now employee, contained fabricated Schedule C income and a fabricated

---

[13]26 U.S.C. § 6694 was amended in 2007 and 2008. Those amendments however only apply to returns prepared, at the earliest, after May 25, 2007. See generally United States v. Pugh, ___. F. Supp. 2d at ___, 2010 WL 2266069 at *13 n.14 (E.D.N.Y. June 1, 2010). Since both parties refer to the version of the statute that was in effect for returns prepared prior to May 25, 2007, the Court follows their lead.

telephone excise tax credit. Smith's return included unsupported Schedule C income which, upon notice of an audit, a Refunds Now employee offered to support with "fake receipts." Fielder's return was an outright fraud on the IRS as it included fabricated wages and a fraudulent earned income credit.[14]

Stone testified that the 350 returns reviewed by the IRS contained, among other things, fabricated income, deductions, education expense tax credits, and earned income tax credits which resulted in an aggregate understatement of tax liability of more than $1,100,000. Brier, and his employees, reported deductions, credits, and income for which they had no support. There is certainly no realistic possibility of sustaining a position for a deduction, credit, or income when the amount is fraudulent. See generally Stone, 2006 WL 2265436 (granting preliminary injunction under § 7407 and enjoining tax preparer and firm based upon an audit and several affidavits from clients noting fabricated deductions and income). Stone interviewed other Refunds Now clients who also indicated that their returns contained fabricated or inflated Schedule C income, Schedule A deductions, and education expense credits. Even the most inexperienced tax return preparer knows or should know that fabricated or inflated deductions, income, or tax credits are frivolous. United States v. Fernandez, No.CIV604CV1772ORL31JGG, 2005 WL 1332278 at *3 (M.D. Fla. May 4, 2005) ("Claiming entirely fabricated, or at the very least overstated deductions is a frivolous position"); United States v. Venie, 691 F. Supp. 834, 839 (M.D. Pa. 1988) ("In holding himself out as a tax return preparer, [defendant] is presumed to be familiar with the Internal Revenue Code as well as regulations and the case law regarding the

---

[14]Brier's explanation that the inaccurate Fielder return filed with the IRS was the result of a "computer glitch" is not credible.

Code"). The Court finds that Brier and Refunds Now have repeatedly engaged in conduct subject to penalty under § 6694(a). See United States v. Paul, No. C04-0916L, 2004 WL 3250168 (W.D. Wash. Sept 17, 2004) (granting preliminary injunction under §§ 7407 and 7408 where defendant was responsible for $1,300,000 in understated tax liability as a result of preparing returns with fabricated charitable contributions and employee business expenses without knowledge of taxpayers); United States v. Deangelo, No. SACV 03251GLT, 2003 WL 23696247 (C.D. Cal. July 30, 2003) (granting preliminary injunction under §§ 7402 and 7407 based on defendants consistently overstating charitable contributions and employee business expenses).

### d. Conduct Subject to Penalty Under 26 U.S.C. § 6694(b)

The Government next argues that Brier engaged in conduct that is subject to penalty under § 6694(b). Section 6694(b) penalizes a tax return preparer "who willfully attempts to understate a taxpayer's liability or who understates a taxpayer's tax liability due to a reckless or intentional disregard of rules and regulations." Buddhu, 2009 WL 1346607 at *3; Pugh, _____ F. Supp. 2d _____, 2010 WL 2266069 at *13. A willful understatement of tax liability includes situations where a tax preparer "intentionally overstates items of deductions." United States v. Ferrand, No. 05-0069, 2006 WL 598212 at *4 (W.D. La. February 7, 2006) (internal quotation marks and citation omitted), report and recommendation adopted, 2006 WL 1401924 (W.D. La. April 11, 2006). Brier certainly "overstated deductions, or, worse, created them out of thin air; and blatantly disregarded the Code and regulations." Ferrand, 2006 WL 598212 at *4. Brier's level of education and experience also suggests that his conduct was knowing and willful. See Paul, 2004 WL 3250168 at *3. Brier and Refunds Now participated in conduct subject to penalty

under § 6694(b).

### 3. Is an injunction appropriate to prevent the recurrence of the proscribed conduct?

Courts look to a number of factors to determine whether an injunction is appropriate to prevent the recurrence of proscribed conduct. Courts evaluate the likelihood of future violations and consider

> (1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated.

United States v. Gleason, 432 F.3d 678, 683 (6th Cir. 2005) (internal quotation marks and citation omitted) (analyzing recurrence under § 7408); United States v. Schiff, 379 F.3d 621 (9th Cir. 2004) (analyzing recurrence under § 7408); Pugh, ___ F. Supp. 2d ____, 2010 WL 2266069 at *23 (same); United States v. Broccolo, No. 06-CV-2812 (KMK), 2006 WL 3690648 (S.D.N.Y. Dec. 13, 2006) (applying similar factors in context of preliminary injunction under § 7407); United States v. Reddy, 500 F. Supp. 2d 877, 882 (N.D. Ill. 2007) (same). These factors strongly support the issuance of an injunction against Brier and Refunds Now. Brier's participation in the tax preparation services was central – he owned all the companies that performed tax preparation services and prepared a large number of returns himself. Brier also orchestrated the Refunds Now EFIN charade. Based on a review of Brier's past performance, his continued participation in a tax return preparation service all but assures that widespread violations will continue. The IRS audited 350 Refunds Now tax returns prepared from 2003-2007. Approximately 90% of those returns resulted in an increased tax liability owed to the Government. The examined returns reflect a total understated tax liability of more than

$1,100,000. Refunds Now prepared approximately 24,000 tax returns for the period 2003-2007. The record reflects that in 2009, Refunds Now prepared approximately 8,000 returns. "Given the volume of returns generated and the potentially large amount of understated tax liability, the Court believes that, absent an injunction, [Brier's and Refunds Now's] deleterious behavior is all but certain to [re-]occur." Stone, 2006 WL 2265436 at *3.

The record evidence also supports the issuance of an injunction against Sroufe with respect to his EFIN conduct. Sroufe was a knowing participant in Brier's EFIN charade. Sroufe's deceptive conduct is likely to continue absent an injunction.

An injunction pursuant to § 7407 need not merely prohibit specified types of misconduct or specific violations of the IRS Code. An injunction may be broader and prohibit an income tax return preparer from acting as an income tax return preparer if the Court finds that the preparer has continually or repeatedly engaged in prohibited conduct which violates § 7407 and a more limited injunction would not be sufficient to prevent interference with the Internal Revenue Code. 26 U.S.C. § 7407(b)(2). The persuasive evidence of Brier's repeated illegal, deceptive and fraudulent conduct is more than sufficient to conclude that anything short of broad injunctive relief will not prevent future misconduct by Brier and Refunds Now.

## B. 26 U.S.C. § 7408

The Government argues that all Defendants should be enjoined under § 7408 because they have engaged in conduct subject to penalty under 26 U.S.C. § 6701. A court is authorized to issue an injunction under § 7408 if (1) an individual engages in conduct subject to penalty under 26 U.S.C. § 6701, and (2) injunctive relief is appropriate to prevent recurrence of such conduct.

United States v. McIntyre, ___ F. Supp. ____, 2010 WL 2103226 (C.D. Cal. May 24, 2010).[15] Section 6701 prohibits aiding and abetting the understatement of tax liability. Id. at *6. Under § 6701, a person (1) "who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim or other document, (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person" may be penalized. Id. (internal quotation marks and citation omitted). Brier's conduct satisfies this standard. Brier and Refunds Now clearly advised, aided, and assisted clients in preparing and filing fraudulent tax returns in order to secure fraudulent refunds. Brier knew these returns would be used in connection with a material matter arising under the Internal Revenue Code and that these fraudulent returns and forms would result in the understatement of tax liability. Brier and Refunds Now have certainly participated in conduct subject to penalty under § 6701.

The Court has already concluded that injunctive relief is appropriate to prevent the recurrence of certain proscribed conduct pursuant to § 7407. The Court reaches the same conclusion under § 7408.[16]

Once again, The Government's evidence centered around Brier and Refunds Now. The Government failed to present sufficient specific evidence concerning Sroufe's, Santiago's and Miranda's preparation of specific tax returns. Consequently, the Government has failed to meet

---

[15]Because § 7408 expressly authorizes the Court to issue an injunction, the Court again dispenses with the traditional injunctive relief analysis. See 26 U.S.C. § 7408.

[16]As noted, however, § 7408 does not authorize the court to issue a broad injunction against all tax return preparation.

its burden under § 7408 with respect to Sroufe, Santiago and Miranda.

## C. 26 U.S.C. § 7402(a)

The Government argues that all Defendants should be enjoined pursuant to § 7402(a). Section 7402(a) gives this Court the jurisdiction to issue injunctions in civil actions "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Section "7402(a) encompasses a broad range of powers necessary to compel compliance with the tax laws." Ernst & Whinney, 735 F.2d at 1300; Pugh, ___ F. Supp. 2d ___, 2010 WL 2266069 at *24 (§ 7402(a) is a "catch-all" provision and has been used to enjoin interference with tax enforcement even when interference does not violate any tax statute; its remedies are in addition to and not exclusive of any and all other remedies). Section 7402(a) was enacted by Congress to "provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws." Brody v. United States, 243 F.2d 378, 384 (1st Cir. 1957) (emphasis added). A court may enjoin a defendant from acting as a federal tax preparer under § 7402(a). Pugh, ___ F. Supp. 2d ___, 2010 WL 2266069 at *24; United States v. Bailey, 789 F. Supp. 788 (N.D. Tex. 1992).

To obtain an injunction under § 7402(a), the Government must show that an injunction is necessary or appropriate to enforce the internal revenue laws. United States v. Madzima, No. 3:08-CV-1043-B, 2009 WL 2596599 (N.D. Tex. August 21, 2009). In considering injunctive relief under § 7402(a), some courts consider the traditional equitable factors, Ernst & Whinney, 735 F.2d at 1301; Broccolo, 2006 WL 3690648 at *6; United States v. Haggert, Civ. No. 95-236-B, 1996 WL 196757 (D. Me. Feb. 12, 1996), while others do not, United States v. Dykeman Family Corp., No. 09-CV-867, 2009 WL 3735535 (E.D. Wis. Nov. 6, 2009) (injunction under §

7420 may issue without resort to traditional equitable prerequisites); United States v. Thompson, 395 F. Supp. 2d 941 (E.D. Cal. 2005) (same).

This Court analyzes § 7402(a) injunctive relief against the backdrop of the traditional equitable factors: (1) the likelihood of success on the merits; (2) irreparable harm; (3) balance of the relative hardships; and, (4) the effect on the public interest. Gonzalez-Fuentes v. Molina, 607 F.3d 864 (1st Cir. 2010), petition for cert. filed, ____ U.S.L.W. ____, (U.S. Oct. 4, 2010) (No. 10-6873).

The Government has shown a likelihood of success on the merits. The record reflects that Brier has been at the helm of a fraudulent tax preparation service for a number of years. Santiago and Sroufe were important players in Brier's fraudulent tax preparation service. Santiago and Sroufe were both participants in Brier's EFIN charade. Santiago, the president of Refunds Now, also prepared tax returns, supervised employees, and assisted in customer service issues. Sroufe, a past president of Refunds Now, prepared returns, assisted in employee training and customer service, and was responsible for the operation of Refunds Now computer network.

The evidence shows a pattern of disregard for the Internal Revenue Code. The Government has established that Brier, Refunds Now, Sroufe, and Santiago are violating and/or interfering with the administration of the internal revenue code by either preparing and filing tax returns, or aiding a tax preparation firm in the preparation and filing of tax returns, containing fabricated and inflated income, deductions and tax credits. The Government has also demonstrated that both Brier and Sroufe have participated in fraudulent and deceptive EFIN conduct. Furthermore, the Government has also shown that Brier and Refunds Now have engaged in conduct subject to penalty under §§ 6694 and 6695. An injunction is therefore

necessary to enforce the internal revenue laws.

The Government and the public will suffer irreparable harm in the absence of an injunction. The Government has been harmed by a substantial loss of tax revenue and the expense of pursuing the investigation against Defendants. Furthermore, Defendants' clients, who relied upon Defendants "expertise" and advice, have been harmed as they will be forced to pay back tax deficiencies and possibly interest and penalties. Pugh, ___ F. Supp. 2d at ____, 2010 WL 2266069 at *26.

The balance of harm weighs in favor of the Government. Brier, Refunds Now, Sroufe and Santiago do not

> enjoy[ ] a right to profit from illegal conduct, and the harm to them is substantially outweighed by the harm that has been and will continue to be suffered by the Government and [Defendants'] customers as a result of the fraudulent tax returns with which [Brier, Refunds Now, Sroufe and Santiago] have been . . . involved.

Id. at *27

The public interest will also be served by a preliminary injunction. Brier, Refunds Now, Sroufe, and Santiago's

> activities undermine public confidence in the fairness of the federal tax system and advise, encourage and cause violations of the internal revenue laws. The public has a compelling interest in prohibiting [deceptive and illegal conduct] that aid some in avoiding lawful income taxes . . . and a [temporary] injunction will prevent taxpayers from having inaccurate, frivolous or fraudulent returns filed in their name that would subject them to liability for overdue taxes, penalties, and interest.

Id. (internal quotation marks and citation omitted).

As noted above, § 7402(a) gives this Court the power to enjoin a tax preparer from preparing tax returns. Pugh, ___ F. Supp. 2d ___, 2010 WL 2266069 at *24. 2345. The Court concludes that Brier, Refunds Now, Sroufe and Santiago should be preliminarily enjoined from

preparing tax returns based on the volume of returns prepared by Refunds Now and the potentially large amount of understated tax liability.[17]

## V. Conclusion

Based on the foregoing factual findings and legal conclusions, the Court makes the following orders:

(1) Defendants Michael Brier, Jeffrey Sroufe, Esther Santiago, and Refunds Now Inc., individually, and doing business under the names RNTS, Inc., FTIRS, Inc., POTIRS, Inc., and IHIRS, Inc., or under any other name or using any other entity, and their representatives, agents, servants, employees, attorneys, and all persons in active concert or participation with them, are preliminarily enjoined and prohibited, during the pendency of this action:

(a) from directly or indirectly acting as federal income tax return preparers and are hereby prohibited from preparing, filing or assisting in the preparing and filing of federal income tax returns, amended returns, or other related forms and documents on behalf of any person other than themselves; and

(b) from engaging in any conduct subject to any penalty under the Internal Revenue Code or any other conduct that interferes with the administration and enforcement of the internal revenue laws.

(2) Defendants Michael Brier, Jeffrey Sroufe, and Refunds Now, Inc., individually and doing business under the names RNTS, Inc., FTIRS, Inc., POTIRS, Inc., and IHIRS, Inc., or under any other name or using any other entity, and their representatives, agents, servants, employees, attorneys, and all persons in active concert or participation with them, are

---

[17]The Government presented meager evidence with respect to Miranda.

preliminarily enjoined and prohibited, during the pendency of this action from applying for or using, either individually or through any other individual or entity, an Electronic Filing Identification Number.

(3) Defendants Michael Brier and Refunds Now, Inc., individually, and doing business under the names RNTS, Inc., FTIRS, Inc., POTIRS, Inc., and IHIRS, Inc., or under any other name or using any other entity, and their representatives, agents, servants, employees, attorneys, and all persons in active concert or participation with them, are preliminarily enjoined and prohibited, during the pendency of this action from engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, including failing to furnish an identifying number on a tax return and understating tax liabilities.

(4) Defendants Michael Brier, Jeffrey Sroufe, Esther Santiago, and Refunds Now, Inc., individually, and doing business under the names RNTS, Inc., FTIRS, Inc., POTIRS, Inc., and IHIRS, Inc., or under any other name or using any other entity, are ordered to provide counsel for the United States, on or before December 15, 2010, a list of names, addresses, e-mail addresses, telephone numbers, and social security numbers of all clients for whom they prepared or helped prepare any tax-related documents, including claims for refunds or tax returns, since January 1, 2004.

SO ORDERED.

_____
Mary M. Lisi
Chief United States District Judge
November _5_, 2010.